**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRACE EREMIN, | ) |
| | ) |
| Plaintiff, | ) |
| | )   CASE NO. 11-CV-3977 |
| v. | ) |
| | )   District Judge Robert M. Dow, Jr. |
| BLUE CROSS BLUE SHIELD ASSOCIATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Grace Eremin claims that she was retaliated against by her employer Defendant Blue Cross Blue Shield Association ("BCBS"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, and the Age Discrimination in Employment Act of 1976 ("ADEA"), 29 U.S.C. § 621 *et seq*.  BCBS filed a motion for summary judgment [29] as to both counts of Plaintiff's complaint, and Plaintiff filed a motion to strike portions of Defendant's Local Rule 56.1 statement [43].  For the following reasons, the Court denies Plaintiff's motion to strike [43] and grants Defendant's motion for summary judgment [29].

**I.     Motion to Strike**

A party who wishes to argue that portions of an opposing party's statement of facts contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement.  *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997).   "Pleadings that do not conform with the local rules may be stricken at the discretion of the court."  *Id*. at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990)); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989), *aff'd*, 914 F.2d 909 (7th Cir. 1990)).   Indeed, it is the

function of the Court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement.  See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004).  The Court is capable of redacting the statement of facts and disregarding interpretation or analysis of the facts, or unfounded assertions of fact found in the statement.  The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it.

For example, testimony must be based on personal knowledge.  See, *e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative and lacking in foundation * * * is insufficient"); Fed. R. Civ. P. 56(e).  In addition, although the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence.  By way of illustration, a deposition transcript usually is not admissible at trial but (obviously) may be used in support of summary judgment; however, a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition.  See *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions * * * are admissible in summary judgment proceedings to establish the truth of what is attested or deposed").

Here, Plaintiff moves to strike 18 paragraphs of fact offered by BCBS in its Local Rule 56.1 Statement of Undisputed Material Facts on the basis that they are allegedly supported by

inadmissible hearsay. Eremin also seeks to strike an additional factual paragraph because it purportedly calls for a credibility determination. Although the Court need not rule on the particulars of Plaintiff's motion to strike because any statements or responses that contain legal conclusions or argument, contain hearsay, or are not supported by evidence in the record will not be considered by the Court in ruling on Defendant's motion for summary judgment, the Court briefly addresses Plaintiff's challenges. Paragraphs 52, 53, and 57 of BCBS's facts are supported by records of regularly conducted activity which are hearsay exceptions under FRE 803(6). As set forth in the declaration of Strahan, the Business Rationale and Interoffice Memo were records that Strahan created, and has personal knowledge of, and BCBS maintained them in the regular course of business. See *United States v. Given,* 164 F.3d 389, 394 (7th Cir. 1999) ("A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of regularly conducted business activity, and that it was the regular practice of that business to make such records."). Therefore, these two documents fall within hearsay exceptions and are admissible. Similarly, paragraphs 23, 34, 69 and 70 neither contain, nor rely on, out of court statements and thus they are not hearsay.

With respect to the facts offered by BCBS relating to complaints made by Plaintiff's coworkers to BCBS (see ¶ 20-22, 28, 32, 38-41, 49, 50), these statements are admissible because BCBS is not offering this evidence for the truth of the matter asserted. Rather, the evidence is being offered to show the effect of the statements on the decision-makers, Defendant's knowledge of these complaints, and the reasonableness of Defendant's actions in light of the co-worker complaints received. This type of evidence is routinely considered in employment discrimination cases. See, *e.g.*, *Cotter v. Village of Maple Park,* 2006 WL 218161, at *1-3 (N.D.

Ill Jan. 25, 2006) (overruling plaintiff's hearsay objections and finding that statements were not hearsay because they were offered to demonstrate the effect on defendants, the reasonableness of defendant's decision to keep plaintiff on administrative leave, and to explain the actions that defendants took in response to the information they received). Finally, Plaintiff's argument that paragraph 48 is inadmissible because it calls for a credibility determination is not persuasive. Eremin's manager, Jayne Leone, completed Eremin's performance review for the period January 1, 2009 to December 31, 2009. Leone commented in Eremin's performance review that, "Grace needs to embody the spirit of teamwork, consider her tone and mannerisms and interactions with team members and continue to develop a willingness to share information and knowledge in a positive manner." Paragraph 48 is not hearsay because the performance review itself is admissible as a hearsay exception pursuant to FRE 803(6) and the statements contained therein are being offered to show BCBS's knowledge of the information and the reasonableness of the actions BCBS took in response to that information. See *Cotter*, 2006 WL 218161 at *1-3.

Consistent with the foregoing discussion, many of the parties' assertions comply with Local Rule 56.1, but a few do not.[1] Any paragraph or fact that is not supported by record evidence or is based on hearsay will be disregarded. Indeed, the Court has not relied on any evidence to which there is a genuine dispute in its disposition of Defendant's motion for summary judgment. Thus, consistent with the discussion above, the Court denies Plaintiff's motion to strike [43] and will rely only on material statements of fact which are both admissible and supported by the record compiled at the summary judgment stage. See Fed. R. Civ. P. 56(e);

---

[1] For instance, Plaintiff attaches certain "notes" and memoranda as exhibits (see, *e.g.*, Plaintiff's Exhibits 9, 10, and 11). However, the documents do not identify the author or, in certain instances, the date the document was created, and Plaintiff also fails to attest to the authenticity of the notes and memoranda, to cite deposition testimony to bolster the authenticity, or include any declarations stating that the documents are business records. Because Plaintiff offers these documents as the crux of her retaliation claim, the Court discusses these particular exhibits at length in analyzing Plaintiff's retaliation claim. See *infra* pp. 16-18 and n.4.

L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 (N.D. Ill. 2007); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D. Ill. 2007).

## II.     Facts[2]

Plaintiff Grace Eremin is a former employee of Defendant BCBS, a national federation of independent community-based and locally operated Blue Cross and Blue Shield companies. BCBS supplies business strategy, technical support, health care services, and consulting expertise for its business partners, the independent Blue Cross and Blue Shield Benefit Plans. BCBS hired Eremin in June 2005 as Manager of Communications in the Information Technology Division ("IT"). Eremin holds both a master's and a bachelor's degree in business administration. As Manager, Eremin was responsible for overseeing a staff of three individuals and providing communication support to the development department within IT. Eremin worked with other employees in the development department including project managers, developers, and senior managers.

From June 2005 through February 2008, Eremin was supervised by Dan Wessels. Wessels completed Eremin's performance review for the period June 13, 2005 to December 31, 2005, and gave Eremin a rating of "2" in the area of employee environment. Eremin understood that a rating of "2" meant that she needed to improve. Wessels commented in Eremin's 2005 performance review that with respect to the employee environment rating, "Grace needs to create a collaborative environment to ensure her mode of communication is professional, positive, and

---

[2]  The Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R. 56.1") statements, to the extent those facts are supported by admissible evidence. The Court resolves all genuine factual ambiguities in Plaintiff's favor (see *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004)), and takes no position on whose version of disputed factual matters is correct. See, *e.g.*, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (stressing that on summary judgment, courts must look "at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true").

promotes diversity." Wessels also completed Eremin's performance review for the period January 1, 2006 to December 31, 2006, and again rated Eremin a "2" in the area of employee environment. Wessels commented in Eremin's 2006 performance review that with respect to the employee environment rating,

> I would encourage Grace to continue working on interpersonal skills. She has taken some professional development in this area of focus, and I continue to encourage Grace to be mindful of how she communicates with staff, consultants, etc. Sometimes it's not in what is said but it is the manner and/or tone that are perceived negatively. In other cases, it is being sensitive to how a message is delivered.

For the period from January 1, 2007 to December 31, 2007, Wessels rated Eremin a "3" in the area of employee environment, noting that Eremin had made improvements and encouraging her to limit her e-mail communication to curb miscommunications.

In January 2008, BCBS employee Pamela Richardson complained in writing to Doug Porter, Chief Information Office of IT, about Eremin's management style and raised concerns about reporting to Eremin. In the letter, Richardson claims that numerous employees who were assigned to work for Eremin had left BCBS because of Eremin's management style. Eremin admits that at least five employees who reported to her during the June 2005 to January 2008 timeframe transferred to a different department or left BCBS.

In February 2008, BCBS reorganized the IT department. As part of the reorganization, Communications was expanded to support all of IT. Eremin was promoted by Wessels to Senior Manager of Communications. As Senior Manager, the number of employees that Eremin supervised increased from three to approximately six or seven employees and Eremin also began reporting to Herman Strahan, Executive Director. Tim Ratchford, another manager at the time, was promoted to a director position.

Eremin testified that on February 18, 2008, she had a meeting with Strahan where she relayed her disappointment with her promotion and noted that she believed that men typically are promoted from manager to director, while women are promoted from manager to senior manager in the IT Department. She also expressed disappointment that her grade was not increased, despite the fact that her responsibilities had increased. Eremin testified that Strahan told her to discuss the issue with Porter, whereas Strahan doesn't recall that specific conversation with Eremin. Eremin admits that she never met with Porter regarding this issue.

On March 17, 2008, Pamela Richardson again complained in writing to Porter that Eremin made derogatory comments to other BCBS employees, including comments that Richardson was "really kissing [Eremin's] ass" and that Eremin had written up Richardson for personal e-mails. Porter forwarded the complaint to Deborah Bandura, Director of Human Resources. On March 24, 2008, Bandura and Strahan met with Eremin regarding Richardson's complaint. Bandura informed Eremin that Richardson had complained about Eremin making derogatory comments. During the meeting, Strahan counseled Eremin on how to improve her communications with other employees.

According to Strahan, throughout the spring and summer of 2008, members of Eremin's staff—Alison Wagoner, A.J. Belmont and Kathy Olesek—complained to Strahan about Eremin's demeanor and management style. In August 2008, Strahan decided to place Eremin on a performance improvement plan ("PIP") based on the complaints. Strahan made this decision after consulting with Bandura. On August 18, 2008, Eremin was given the PIP during a meeting with Strahan and Bandura. Eremin testified that she understood that the PIP was the result of complaints that other employees had made about her, but she said that she did not understand the degree or nature of the complaints or that they were personally directed against her. The PIP

indicated that if Eremin failed to make sufficient improvements within the next 35 days, further disciplinary action, up to and including termination of her employment, could result. In September 2008, Eremin successfully completed the PIP. Strahan completed Eremin's performance review for the period January 1, 2008 to December 31, 2008, and rated Eremin a "2" in the area of employee environment.

From mid-2008 to April 2009, David Mansfield reported to Eremin. Eremin testified that Mansfield had performance issues which she reported to Strahan. She was told to document the issues and discuss them with Mansfield. On January 21, 2009, Eremin met with Mansfield to discuss his performance and told him that he had too many errors in his daily work, did not follow specific instructions, and that he must stop arguing with her. On January 26, 2009, Mansfield filed a complaint against Eremin, which he forwarded to Strahan and Bandura. On March 6, 2009, Mansfield filed another written complaint of sexual orientation harassment against Eremin with Bandura. Mansfield's complaint alleged that Eremin had made homophobic remarks and that Eremin had harassed him based on his sexual orientation by criticizing his performance. Bandura investigated Mansfield's complaint and interviewed Eremin, Mansfield, and six other employees. Bandura instructed Eremin not to discuss the complaint with Mansfield. On March 18, 2009, Bandura concluded her investigation into Mansfield's complaint and found that Mansfield's complaint to be unsubstantiated.

On April 15, 2009, Strahan observed Eremin and Mansfield arguing in front of other BCBS employees. Strahan informed both Eremin and Mansfield that their behavior was inappropriate and needed to stop immediately. On April 15, 2009, Chris Long, Managing Director of Human Resources, informed Bandura that Mansfield had complained that Eremin was abusive and threatening toward him. That same day, Strahan and Bandura met with Eremin

regarding Mansfield's complaint. Eremin denied threatening Mansfield, but admitted that she brought up Mansfield's prior complaint of sexual orientation discrimination during her conversation with Mansfield. On April 20, 2009, Strahan and Bandura decided to move Eremin into a non-management position because they felt that she lacked management skills and good judgment based on her interactions with Mansfield and ongoing concerns about her ability to manage employees.

On April 27, 2009, BCBS transitioned Eremin into the non-managerial position of Technical Writer III under the supervision of Jayne Leone. Eremin's salary and grade remained the same. As a Technical Writer III, Eremin was responsible for writing and editing technical and non-technical communications for the IT department including manuals, user guides, memoranda, and presentations. Eremin believes that she was placed into the Technical Writer III position because she told Mansfield that she was aware of his complaint of sexual orientation discrimination.

In August 2009, BCBS employees Melanie Mathis and A.J. Belmont complained to Strahan that Eremin was making inappropriate comments regarding Mansfield, including those directed at Mansfield's sexual orientation. Strahan informed Bandura of the complaints, and Bandura investigated the complaints. On August 17, 2009, Strahan and Bandura met with Eremin and gave her a written warning. The written warning identified the following issues:

> Suggesting a mean-spirited, childish prank directed towards an employee with whom you already have a contentious relationship. Example: suggesting putting Jell-O in or around David Mansfield's water bottles while he was out on vacation.
>
> Inappropriate and derogatory comments about a colleague related to a protected status. Example: suggesting laying blame on a co-worker for the above prank by having that co-worker wear a pin with the word Jell-O spelled out, and/or including a rainbow on it. This was interpreted by colleagues as reference to David's lifestyle.

> Talking negatively about other behind their backs, leading to mistrust regarding you as a co-worker and affecting productivity due to others not wanting to deal with you.
>
> Making questionable comments regarding contributing to David Mansfield interim PMP. "I'll bet he didn't plan on *me* doing his PMP."

The warning stated that "[a]ny further misconduct of this type will lead to further disciplinary action, up to and including termination."

Eremin testified that in late August or September 2009, she met with Long and informed him that she had made a complaint in early 2008 regarding discrepancies between promotional patterns of men and women within IT and felt that there had been a pattern of retaliation against her, noting that "[t]he most recent example was this general warning in which I was being written up for statements that had actually been made by other people." On September 15, 2009, Eremin's attorney sent a letter to Chris Long, Managing Director of Human Resources, requesting mediation because her working conditions had declined after she had complained to Strahan on February 19, 2008 about sex discrimination in BCBS's promotional practices. On September 24, 2009, Bandura sent a letter to Eremin's attorney declining mediation and proposing that Eremin follow BCBS's Employee Problem Resolution policy and submit a written summary of her situation, a proposed resolution, and all supporting documentation to William Colbourne, Senior Vice President of Human Resources & Administration, so that an investigation could be conducted. Eremin never submitted any such materials to Colbourne.[3]

---

[3] On June 25, 2012, the day on which her response to Defendant's summary judgment was due, Plaintiff created a "declaration" to support her statement of additional facts. Her "declaration," created after her deposition, attempts to introduce new facts which contradict her deposition testimony. For instance, in her declaration she states that on October 9, 2009, she "submitted a written summary of my situation, a proposed resolution and all supporting documentation to William Colbourne pursuant to Human Resources's request" and further states that she "never received a response from [BCBS]." This testimony stands in direct conflict with her deposition testimony, in which she was asked if she submitted "a detailed written statement regarding [her] complaint as well as a requested resolution," and she replied, "No, I did not." Eremin Dep. at 152-53. It is well-settled that a plaintiff cannot defeat a motion for

Eremin's manager, Jayne Leone, completed Eremin's performance review for the period January 1, 2009 to December 31, 2009. Leone commented in Eremin's performance review that, "Grace needs to embody the spirit of teamwork, consider her tone and mannerisms and interactions with team members and continue to develop a willingness to share information and knowledge in a positive manner." In May 2010, Leone informed Eremin that she had received ongoing complaints from Eremin's coworkers that Eremin engaged in inappropriate behavior including negative body language such as rolling her eyes, condescending remarks, and obscene finger gestures. On May 20, 2010, Eremin met with Bandura and Leone regarding these complaints. Eremin admits that in 2010, she had a conflict with at least one co-worker, Michelle Klein. She also testified that eye-rolling was a problem that had been previously raised with her, but that she had made a concentrated effort to not do it.

According to Eremin, in September 2010, David Goldstein became her supervisor. In early January 2011, Eremin told Goldstein that she believed that Strahan and Leone had violated

---

summary judgment by "contradict[ing] deposition testimony with later-filed contradictory affidavits." *Ineichen v. Ameritech*, 410 F. 3d 956, 963 (7th Cir. 2005); see also *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). As the Seventh Circuit further explained in *Bank of Illinois*, "we have long followed the rule that parties cannot thwart the purpose of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions * * * * If such contradictions were permitted * * * the very purpose of the summary judgment motion – to weed out unfounded claims, specious denials, and sham defenses – would be severely undercut.'" *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). Furthermore, Plaintiff's "declaration" does not comply with the requirements of Rule 56(e). An affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56 (e)(1). Although an affidavit does not necessarily need to be notarized to be admissible, an unsworn affidavit must be declared true "under penalty of perjury," signed, and dated to be admissible. See 28 U.S.C. § 1746; *Cornelius v. Hondo Inc.*, 843 F. Supp. 1243, 1247 (N.D. Ill. 1994); *Mazeika v. Architectural Specialty Products, Inc.*, 2006 WL 2850480, at *1 n.1 (N.D. Ill. Sept. 29, 2006). Plaintiff's affidavit is not notarized and the information contained within it is not declared true "under penalty of perjury." Thus, to the extent that any of Plaintiff's additional statements of fact rely solely upon Plaintiff's declaration, which does not comply with the requirements of Rule 56(e) and also offers self-serving testimony that contradicts her deposition testimony, this Court will not consider those additional fact statements. See also *Frieson v. County of Cook*, 2010 WL 2927428, at *2 (N.D. Ill. July 21, 2010).

BCBS's code of conduct by not disciplining employees fairly and also told Goldstein that her working conditions had deteriorated since 2008 when she complained about BCBS's promotional policies. She "specifically asked [Goldstein] not to go any further with the information until [she] could have some time to figure out how to best approach the situation."

On February 1, 2011, Strahan informed Eremin that her position had been eliminated and that she was being terminated. Strahan made the decision to fire Eremin. Eremin was 52 years old at the time she was fired; Strahan was 60 years old. In addition to Plaintiff, the following individuals were terminated: David Goldstein (40 years old), Director of Communication and Training, and Stephen Johnson (56 years old), IT Manager. Like Eremin, both Goldstein and Johnson had prior performance problems. However, according to BCBS, the terminations were due to BCBS's decision to restructure its IT Communications and IT Training Group due to a reduction in the demand for services. Strahan testified that the changing needs of the department required that BCBS provide services in a different manner, such as via electronic media (including videos). Strahan did not believe that Eremin had the necessary electronic communication skills for the new position, and he also selected Eremin for termination based on her history of performance problems. Eremin testified during her deposition that she lacked certain skills that Strahan told her would be required for the revised Technical Writer III position, including video and wiki experience.[4] Subsequent to Plaintiff's termination, some of her job responsibilities were assigned to Melanie Mathis, Tech Writer I, and Dawn Stiers, Technical Trainer Web II. The new Technical Writer III position was never filled.

On March 24, 2011, Eremin filed a charge with the EEOC alleging that her termination was in retaliation for engaging in protected activity in violation of Title VII. On March 30, 2011,

---

[4] In her later-filed declaration, she stated that she had experience in various electronic media and training in video; however, as previously explained, her declaration is not properly before the Court.

the EEOC issued a Notice of Right to Sue. On April 11, 2011, Eremin filed a new charge with the EEOC, using the same factual basis as her prior charge, but this time alleging that she was terminated on the basis of her age. On August 1, 2011, the EEOC issued a second Notice of Right to Sue. Eremin claims that Strahan retaliated against her for complaining about allegedly discriminatory promotional policies at BCBS because she was placed on a PIP, received discipline based on what she believed to be false accusations, and eventually was terminated. She also claims that Strahan retaliated against her in July 2008 when he called Eremin at around 9 p.m. at night to address work-related concerns raised by Chief Information Officer Doug Porter. Eremin claims that Strahan raised his voice during this conversation. She also maintains that sometime between the summer of 2008 and 2010 she asked to be transferred out of her department, but that her request was denied by Strahan.

During the relevant time period, BCBS maintained a written Equal Employment Opportunity Policy that prohibited discrimination on the basis of sex, age, sexual orientation, or any other protected classification and prohibited retaliation for reporting alleged discrimination. The policy contained mechanisms for employees to report alleged discrimination or harassment. Eremin was aware of this policy and knew where to access the policy. BCBS also maintained a policy regarding job performance and conduct that provided, among other things, that employees were expected to interact with each other in a courteous and respectful manner. The policy provided that workplace misconduct could result in disciplinary action.

## III.     Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In

determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.,* 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary

judgment. See *id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## IV.    Analysis

### A.    Plaintiff's Title VII Retaliation Claim

Plaintiff has sued BCBS for retaliation, claiming that BCBS retaliated against her for her February 18, 2008 complaint to Strahan about allegedly discriminatory promotional policies at BCBS. Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Brown*, 499 F.3d at 684 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 662 (7th Cir. 2006) (quotations and citations omitted). "Under the direct method, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted). Alternatively, under the indirect approach, in order to establish a *prima facie* case for retaliation, the employee must show that (1) after filing a charge, the employee was subject to adverse employment action; (2) at the time, the employee was performing her job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action. See *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir. 2004). "'If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.'" *Tomanovich,* 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164

F.3d 353, 362 (7th Cir. 1998)).  Then, if the employer presents evidence of a non-discriminatory reason for its employment action, "'the burden shifts back to the plaintiff to demonstrate that the employer's reason is pre-textual.'"  *Id.* (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005)).

In the instant case, Eremin alleges that her February 18, 2008 complaint to Strahan of discrepancies in promotion practices caused BCBS to discipline her for performance problems, remove her from her management position, and terminate her in 2011.  In her response brief, Plaintiff states that she "pursues only the direct method."  Pl.'s Resp. at 6.  To establish causation under the direct method, Eremin must show that her protected conduct was a "substantial or motivating factor" in BCBS's decisions.  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686-87 (7th Cir. 2008). In other words, in order to demonstrate a causal link between a termination and the filing of a charge of discrimination, a plaintiff must demonstrate that the employer would not have taken any adverse action "but for" the protected expression. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 479 (7th Cir. 1995).  A plaintiff's uncorroborated deposition testimony is almost always insufficient to demonstrate a causal link. *Sylvester v. SOS Children's Vills Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).  Moreover, mere speculation that a causal connection exists is insufficient.  See *Spellazza v. Ind. Dep't of Natural Res.*, 2010 WL 55565, at *6 (S.D. Ind. Jan. 4, 2010) (mere speculation that a causal connection exists between protected activity and termination cannot thwart summary judgment).  "The mere fact that one event preceded another does nothing to prove that the first event caused the second.  Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000).

In her response brief, Eremin identifies one example of alleged direct evidence, an undated document entitled "Summary of Issues Related to Grace Eremin" that she refers to as Bandura's "report." See Ex. 10, attached to Pl.'s Resp. As set forth in discussing Plaintiff's motion to strike, Plaintiff has not presented any evidence via a declaration, deposition testimony, or any other avenue as to when this document was prepared or who at BCBS prepared it. Furthermore, the exhibit that Plaintiff submitted with her summary judgment materials (see docket entry 37, document marked Exhibit 10) consists only of two pages (bates stamped BCBSA 000919 and 000920) that detail conversations in the summer of 2008 about Eremin's complaint to Strahan and her performance problems. The first page states that Eremin "feels she's overlooked for promotion, with males getting promoted around her," and then goes on to detail numerous complaints Eremin's coworkers brought to BCBS's attention regarding Eremin's behavior and demeanor. Plaintiff contends that there is a section in which Bandura lays out the following options: "PIP, demotion, General Warning and termination." Exhibit 10, submitted by Plaintiff, contains no such language.[5] Further, there are no admissions in the document that anyone at BCBS disciplined, demoted, or terminated Eremin because of her complaint of discrimination.

---

[5] There also is reference to language in the document which states that "the risk of keeping someone with this history could be more damaging. If we keep her but put her in a lesser role, a charge could potentially come from a staff member claiming retaliation by Grace against staff, or Grace's actions could be perceived as creating a hostile work environment. She has already negatively affected the ability of the staff to do their work, and staff is working in fear of retaliation by Grace." Even if Plaintiff had properly submitted this document with her summary judgment materials and verified the authenticity of this document (she has done neither), the plain language of the document makes clear that the recommended discipline was related to the complaints co-workers made against Eremin and not to Eremin's alleged sex discrimination complaint. The document, when taken in the context of the undisputed evidence of performance problems offered by BCBS, is insufficient to establish causation under the direct method. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (if relying on circumstantial evidence, a plaintiff must present a "convincing mosaic" of evidence in order to establish causation.). As set forth in greater detail below, Eremin was not fired until 2011, long after her complaints of sex discrimination, and several intervening factors (continued complaints from co-workers and a reduction-in-force) belie the notion that she was fired in 2011 for her complaints in 2008.

The Court also has reviewed all of the exhibits and deposition transcripts submitted by Plaintiff (see docket entries 36 through 41), including Exhibit 9—handwritten notes dated 7/30/08 (which again do not identify the author but presumably Bandura wrote the notes)—to try to locate the mystery language. None of the exhibits submitted on the Court's docket contain the language that Plaintiff points to in her response brief. As the Seventh Circuit has stressed, it is not the role of the Court to parse the parties' exhibits to construct the facts, particularly when a party does not provide the exhibit. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue,* 2010 WL 4942161, at *7 (N.D. Ill. Dec. 8, 2010) (citing *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the Court's job to sift through the record to find evidence to support a party's claim. *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in his client's favor * * *." *Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613 (7th Cir. 2006). By submitting an affidavit that contradicts previous testimony (and also is not notarized or declared under penalty of perjury) and failing to submit a "key" document, Plaintiff and her counsel have left the Court searching in vain for truffles that have not been found.

Plaintiff falls far short of proving retaliation under the direct method. First, BCBS's discipline—Eremin's PIP and subsequent written warning—were precipitated by numerous staff and peer complaints, including:

- Eremin's former manager, Dan Wessels, identified in Eremin's 2005 and 2006 performance reviews that Eremin needed to improve her interpersonal skills and how she communicated with her staff and peers.

- In January 2008, Pamela Richardson complained in writing about Eremin's management style and raised concerns about reporting to Eremin.

- Between three and five employees who reported to Eremin during the June 2005 to January 2008 time frame (before her complaint to Strahan) transferred to a different department or left BCBS.

- In March 2008, Richardson again complained in writing that Eremin made derogatory comments to other BCBS employees about her.

- Throughout the spring and summer of 2008, Eremin's staff including Alison Wagoner, A.J. Belmont and Kathy Olesek, complained to Strahan about Eremin's demeanor and management style.

- In March and April 2009, David Mansfield filed a written complaint of sexual orientation harassment against Eremin and later complained that Eremin had retaliated against him and made threatening remarks. In April 2009, Strahan observed Eremin engaged in a loud argument with Mansfield in front of other BCBSA employees. Then in August 2009, BCBSA employees Melanie Mathis and A.J. Belmont complained to Mr. Strahan that they believed Eremin was making inappropriate comments regarding Mansfield, including those directed at Mansfield's sexual orientation.

- In May 2010, Eremin's manager, Jayne Leone, informed Eremin that she had received ongoing complaints from Eremin's coworkers that Eremin engaged in inappropriate behavior including negative body language such as rolling her eyes, condescending remarks, and obscene finger gestures.

These complaints provided BCBS with a legitimate reason for disciplining Eremin under its job performance and conduct policy. *Moser,* 406 F.3d at 903 (plaintiff was not meeting employer's legitimate job expectations based on internal incidents which brought plaintiff's professionalism and ability to perform job into question); *Jankovich v. Exelon Corp.*, 2003 WL 260714, * 3 (N.D. Ill January 31, 2003) (plaintiff was not meeting employer's legitimate job expectation based on complaints from coworkers and internal customers). BCBS brought some of these issues to Eremin's attention in her 2005, 2006 and 2007 performance reviews, prior to her February 2008 purported complaint of sex discrimination. See *Moser v. Ind. Dept. of Corr.,*

406 F.3d 895, 903 (7th Cir. 2005) (finding no causal link between reassignment and protected speech where numerous incidents before protected speech brought plaintiff's professionalism and ability to perform job into question). Furthermore, there is no evidence that any employees were aware of Eremin's sex discrimination claim to Strahan. Eremin may disagree with BCBS on whether she was meeting legitimate expectations, but in BCBS's view, her performance fell below expectations. *Watts v. SBC Servs., Inc.*, 2006 WL 2224054, at *5 (N.D. Ill. July 31, 2006) (plaintiff's "own perception of her job performance and behavior is insufficient to raise a genuine issue of fact whether she was meeting [employer's] legitimate job expectations"). BCBS was entitled to hold this view, and the evidence presented by Plaintiff does not come close to painting a different picture.

Further, Eremin's own testimony belies her claim that she was demoted because she complained about alleged sex discrimination. Eremin testified that the reason she was placed into a non-managerial position was because she told Mansfield that she was aware of his complaint of sexual orientation discrimination against her, despite being warned by Human Resources not to do so because of concerns of retaliation. Eremin did not testify that she was demoted because she complained about alleged sex discrimination and she cannot now amend her testimony to create a disputed issue of fact. See *Scaife v. Cook County*, 446 F.3d 735, 741 (7th Cir. 2006) ("self-serving affidavits without factual support in the record will not defeat a motion for summary judgment") (quoting *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001)). Finally, BCBS did not terminate Eremin until February 1, 2011, nearly three years after she complained to Strahan in February 2008 and 16 months after Eremin's attorney submitted a written complaint to Human Resources requesting mediation. This attenuated timing is inadequate to establish causation. See, *e.g. Tomanovich v. City of Indianapolis,* 457 F.3d 656,

665 (7th Cir. 2006) (temporal connection of four months insufficient to establish causation); *Sauzek*, 202 F.3d at 918. Moreover, despite Plaintiff's testimony that Strahan advised her to contact Doug Porter, Chief Information Officer, with her concerns about discrimination in promotions, she never did, nor did she comply with Bandura's recommendation in September 2009 to follow BCBS's Employee Problem Resolution policy and submit a written summary of her situation, a proposed resolution, and all supporting documentation to Colbourne so that an investigation could be conducted.

Lastly, Eremin was terminated along with two other employees, David Goldstein and Stephen Johnson, neither of whom engaged in protected activity and both of whom had a history of performance problems. BCBS maintains that it terminated Eremin (nearly three years after she allegedly complained to Strahan in February 2008 about sex discrimination and over 16 months after her September 2009 request for mediation) because it eliminated her position as part of a departmental reduction-in-force. Eremin has not presented any evidence that the reduction-in-force was not based on legitimate business reasons. On the other hand, BCBS has presented evidence that in February 2011 BCBS restructured its IT Communications and IT Training Group due to a reduction in the demand for services and changes in the types of services needed. BCBS made several changes to Eremin's department including consolidating certain positions and eliminating Eremin's position of Technical Writer III, along with two other positions. (SOF ¶¶52-53.) BCBS then created a new Technical Writer III position with a different skill set that emphasized electronic communications, including video and web—skills which Plaintiff admitted in her deposition that she did not possess. Plaintiff plainly has not demonstrated a causal link between BCBS's allegedly retaliatory conduct and her complaint to Strahan.

### B. ADEA Claim

Eremin claims that BCBS discriminated against her on the basis of age in violation of the ADEA. 29 U.S.C. § 623. To prove a case of discrimination under the ADEA, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reiterating that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Plaintiff chooses the indirect method, requiring her to establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802-04. In order to establish a *prima facie* case of race, sex, and/or age discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007); see also *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) (citing *Krchnavy v. Limagrain Genetics Corp*., 294 F.3d 871, 875 (7th Cir. 2002) ("The *McDonnell Douglas* framework applies to both Title VII and ADEA claims.").

If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). Once the defendant provides a legitimate explanation, the burden then shifts

back to the plaintiff to prove that the proffered justification is pretext. *Fane*, 480 F.3d at 538. The Seventh Circuit has counseled that where a plaintiff has not met his burden of showing that a defendant's explanations are merely a pretext for discrimination, it is not necessary for a court to decide whether the plaintiff also established a prima facie case. See *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990); see also *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985) (moving directly to third step of *McDonnell Douglas* approach where defendant articulated and offered proof of a legitimate, nondiscriminatory reason for adverse employment action). In this case, it makes sense to do just that.

To avoid summary judgment, Plaintiff must prove by a preponderance of the evidence that this proffered reason is pretextual. A plaintiff shows that a reason is pretextual "directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence." *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). An employer's decision to promote is pretextual when "it is a lie – a phony reason meant to cover up a disallowed reason. Otherwise, an employer's decision to favor one candidate over another can be 'mistaken, ill-considered or foolish, [but] so long as [the employer] honestly believed those reasons, pretext has not been shown.'" *Id.* (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002)). In order to establish pretext, Plaintiff must show that Defendant's articulated reasons for its decision (1) had no basis in fact; (2) did not actually motivate the Defendant's decision; or (3) were insufficient to motivate the actions. *Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir. 1994). Plaintiff must "*specifically* refute facts which allegedly support the employer's proffered reasons"; conclusory statements about an

employer's prejudice are insufficient to establish pretext.  *Alexander v, CIT Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 890 (N.D. Ill. 2002) (emphasis in original).

BCBS offers several legitimate, non-discriminatory reasons for firing Plaintiff:  Strahan determined that a reduction-in-force was necessary, Plaintiff did not have the necessary skills to continue in the new role of Technical Writer III, and Plaintiff (as well as the two other terminated employees) had a history of performance problems.  Further, the two employees that Eremin identifies as comparators—Mathis and Stiers—are not similarly situated to Eremin because Plaintiff has failed to present evidence that they had the performance problems that Eremin had.  Rather, the two individuals that were part of the department who had a similar history of documented performance problems also were terminated.   It also is worth noting that Strahan was 60 years old, eight years older than Eremin, when he made the decision to terminate her, and this fact undercuts any inference that his decision was motivated by Eremin's age.  See *Richter v. Hook-SuperRX, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998).  In turn, Eremin offers no evidence to controvert the extensive evidence in the record that she had ongoing behavior problems and failed to meet BCBS's legitimate expectations throughout her employment.  See *Faas v. Sears, Roebuck & Co*, 532 F.3d 633, 641 (7th Cir. 2008) (to establish a *prima facie* case, Eremin must show she was meeting BCBS's legitimate expectations); *Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001) (pattern of performance deficiencies rebuts claim that plaintiff met legitimate expectations).  The only support Eremin that offers is her self-serving declaration that asserts that she was qualified to perform the duties of the new Technical Writer III position, assertions that are in conflict with her deposition testimony and, as discussed previously, will not be considered by the Court.  Simply put, Eremin has presented no admissible evidence of age discrimination.

**V.      Conclusion**

For these reasons, the Court denies Plaintiff's motion to strike [43] and grants Defendant's motion for summary judgment [29]. Accordingly, judgment will be entered in favor of Defendant BCBS and against Plaintiff Grace Eremin on all claims.

Dated:  November 9, 2012

_____
Robert M. Dow, Jr.
United States District Judge